Thank you, your honor. May it please the court, good cause to disallow cross-examination in a supervised release revocation proceeding generally should not lie on the basis that the witness is going to lie on the stand. Faced with two competing and plausible stories from the same witness, there are two choices. Number one, to forego relying on the witness, and number two, to bring the witness into court, administer the oath, see which story the witness picks under penalty of perjury, and confront and cross-examine. Can you just remind us what actually happened whenever, you know, what efforts were made to try to call the witness or track the witness down by counsel for the federal public defender side of the house, or what was, how did this play out factually? So, my understanding, your honor, is that the, there was an initial revocation proceeding that was continued in order to allow the government to present evidence on the alleged aggravated assault, and then at that hearing, Nora Waddy, who was the defense counsel, she objected on due process grounds, and put forward the testimony of Richard Burton, which was our FPD investigator who had had a phone call with Mr. McCuller. But I don't think either the defense or the government made efforts to secure his presentment in court that day. No one said, we need to stop and get him here. I thought he was going to be here. You're sandbagging me by choosing not, that was not part of this at all. There was no sandbagging, but there was an admission by the government that they did not want to put him on because he was going to be damaging to their case, according to them. Well, at that point, wouldn't the lawyer for him say, well, great, I want to call him in, and does that matter here? Your honor, I think, I think what your honor is asking about is the lack of a subpoena. I think that's relevant, but not dispositive in this case. On the defense ... But wouldn't they have a continuance? They'd already gotten one continuance. Couldn't they ask for a continuance and say, I thought this person was going to be here. You're surprising me. I want to call this witness, especially since you said he's good for my case. I think our perspective was, he's an unreliable witness. And so we, we were not seeking to subpoena him because our perspective is, he's unreliable. We shouldn't be having this dispute in the first place. The government's the one who tried to rely on these hearsay statements, and the district court erred by allowing the government to do that without also requiring Mr. McCuller to be present in court for confrontation purposes. The due process, right, your honor, is a right because we, we, as a, as a legal, you know, institution, as truth-seeking functions. Have we held that there in fact is a due process requirement at a revocation hearing? You know, we have had some where we, and I'm not saying whether this is good or bad from a constitutional perspective. I thought we have some case law that says that you don't actually have a constitutional right to confrontation at various stages of these follow-up hearings. It's, it's a qualified right is my understanding, your honor. It can be overcome by good cause It started, I believe, the precedent, the line of precedent is that it started with parole revocation hearings at the Supreme Court level, and then the Fifth Circuit applied that. I believe there's, there's clear precedent that applies that to a supervised release revocation hearing. Okay, so you believe that there, it's clear under our Fifth Circuit precedent or the Supreme Court's precedent, which is part of our precedent, that, that you do have the, the confrontation right in this context specifically? Yes, that it comes from the due process. And what is the best case? What is the best case for that? The best case for the application? I... The best case that there is in fact a constitutional right of confrontation in this type of hearing in the Supreme Court or this circuit. So the Supreme Court cases, if I, if the court could just give me a minute. Okay. Well, maybe you come back to it in your rebuttal or something. I don't want to distract you. You acknowledge it's not the same as the confrontation clause. It's a... Right, the... Qualified right. Yes, it can be overcome by good cause. Yes, it can. But the starting promise is that it's there unless it's overcome by good cause. And so our position is that the government has not shown good cause in this case. For three primary reasons, number one, the interest was at its apex. I think that the United States versus Alvear, which is cited by both, by the confrontation, the right to confrontation, the interest in confrontation is at its apex when you have the core proof and here it was the sole proof of a grade A violation being the hearsay statements at issue. And then secondly, the government interest here is completely different from what was at issue in Alvear. So I do think that the government takes the position that Alvear governs the outcome in this case. I think it's a highly distinguishable case. The government interest in Alvear was the fear of testifying, right? So there were multiple ways and multiple instances where the hearsay declarant in that case had indicated a fear or a concern over her safety. And that's not the case here. Below, the government conceded, I think it's at record 79 to 80, that Mr. McCuller, who's the declarant here, had no fear of Mr. Trammell at the time, right? So that government interest that was at play is not, in Alvear, is not at play in this case. And then secondly, the sufficient initiative for liability. So Alvear focused on three things. It focused on cooperation. It focused on the fact that some of the hearsay statements had been sworn. And it focused on other reasons or alleviation of the reliability of the statements, right? So with regard to corroboration, we don't have much corroboration in this case. The only physical evidence that's corroborated, if you will... Body camera footage. Yes, we do have body camera footage. Yes, we do. And that speaks to the demeanor at the time that the hearsay statements were made. But what we don't have to weigh against that is the demeanor. First, two things, actually. So the first data point that's missing is what story was going to be picked under penalty of perjury, right? So once someone comes in and they need to swear to tell the truth, what was the story that was going to be picked? We're missing that here. And then the second thing is, what is the demeanor when they're confronted? I think the law is awash of instances where we recognize that demeanor can sometimes be very telling of the truth, more so than just mere words. And so to go back to the cooperation point, the only physical evidence that the government could really point to was this bat. But the bat, even by Officer Griffith's testimony, is a family heirloom, so it's not very probative that Mr. McCuller knew about the bat. What about the destruction at the home? Why isn't that corroborative evidence that the fact that the... I know they said it was a civil matter, but nonetheless, they observed the destruction from this battle that's going on at the home. Yes, and the counter-narrative, Your Honor, is not dependent on there not being destruction to the home. So it's who started it? No, it's not. Why not? It's not about who started it. It's just they had a dispute going on where Mr. McCuller wanted Mr. Trammell removed from the property. And so I think the evidence is supportive of an inference that he called the cops to help manage a dispute that he was having with his brother. He wasn't calling for protection. What about the meth allegation? Did that get proven up that he was back on drugs or anything? Is that part of this record in any way other than in this statement? There was... I don't believe there was any proof that he was on meth that day. If the court's question is, is there proof of drug use, yes. I mean, Mr. Trammell admitted to using methamphetamine, I believe, on one occasion. Doesn't that mandate the revocation of his supervised release? No, I don't think it does, Your Honor, because mandatory revocation is mandatory until it's not, right? There is an exception if we believe that treatment is going to be helpful, and in fact the court should have conducted findings under that if she was operating under the mandatory revocation statute, and that's not what happened at the district court. The district court revoked here after she found that the grade A violation was proved, and I believe her exact word was riveting. She found it riveting, and so I think at that point it was a foregone conclusion that revocation was going to happen once the due process issue was ruled upon. So I don't think it can be said that Mr. Trammell would have been revoked anyways. Now, we have a very experienced district court who said absolutely, absolutely, a hundred percent over the beyond a reasonable doubt, sure, do not even have a scintilla of a doubt. This is a unique thing to see in a record. How should that cut here? Your Honor, I don't think that it was proper for the district court to make that credibility determination without having Mr. McCuller in court and confronted, and that's where the error is. The error is that she allowed, I mean with all due respect to the district court, you know, the admission of these hearsay statements without the concomitant opportunity for Mr. Trammell to prove his side of the story, you know, and the FPD investigator's testimony does not suffice for the same reasons that we have the due process right to confrontation in the first place, you know. It's just hard because he could have proven his side of the story by calling the same person who's saying they shouldn't be relying on his pre-recorded statement. Well, Your Honor, respectfully I disagree that that's the way to kind of look at this because good causes is on the government's burden. I mean, the default is that we have that right. The government was the one that of having to rely, of wanting to rely on hearsay statements without presenting the witness because the witness was not going to be favorable to them, right? So this is a situation that was created by the government, and in fact, in our precedent, if the court may give me just one second, there is, I believe it is the McBride case that indicates, just one having to do more because that would, quote, cut out the heart of the confrontation right. And so, Your Honor, I don't, I think the question is not whether we could have done more. I think the question is has the government proven good cause, and I don't believe that they have under the facts of this case. Their good cause is basically the witness is not going to be good for us. It cannot be that the proponent of the hearsay statements don't want to bring the declarant into court because they're not going to be, they're not going to testify in their favor. I mean, that cuts out the whole right of the due process confrontation. And furthermore, I think a big problem with the government's arguments in this case is there is no limiting principle, right? We cannot, if good cause exists in this case, in what case is it not going to exist, right? There is no limiting principle to what the government is arguing. You don't have a recording and you don't have physical evidence. Well, Your Honor, but that's, but that's, but that's just, so in every supervised release revocation hearing, good cause can be, can be shown if you have body camera evidence of the incident in question, when somebody has a motivation to lie on that body cam. I mean, the whole problem here came about, again, because the government got to put their side of the story and we didn't. Do you have a question? I did. I thought we were both going at the same time, so I want to make sure you have a chance. I appreciate it. Can we circle back real quick to the harmlessness problem? Yes. Yes, Your Honor. So I'm looking at Commentary Application Note 5 to Guideline Provision 7B1.4, and it says upon a finding that a defendant violated a condition of probation or supervised release by being in possession of a controlled substance or firearm, or by refusing to comply with a condition requiring drug testing, the court is required to revoke probation or supervised release. So in pleading true to the use of methamphetamine, your client also pled true to refusing the drug testing or failing to comply with the drug testing condition. So I'm not sure I understand your answer that it's not a mandatory revocation of the supervised release condition. So I believe Your Honor was reading from 7B1.4, is that correct? Yes. So the policy statement is not binding on the district court. When I was responding to the court's prior question, I was relying on 3583, which does require revocation unless there's an exception found, I believe it's found in subsection D of the statute. And my argument is that that wasn't fully fleshed out. At the revocation hearing, there's no assurance that revocation would have occurred but for the finding of the grade A violation. And I think that's shown from the record. Can I ask one more? Just follow up. Sure. So I understand the subsection of the statute to map onto the next application note, which is if the defendant fails drug testing, then you can have these other conditions where you can, you know, maybe you can do substance abuse or whatever. But the one I'm referring, that's application note 6, but application note 5 seems to suggest that if you just refuse the drug testing condition or you fail to do it, which is what he pled true to, then we'd never even get to these questions because you have to revoke supervisory release anyway. I mean, again, Your Honor, I hate to belabor the point, but the policy statement is non-binding, right? And so, again, I think when you're thinking through was revocation going to happen regardless, my position is no, because the only thing that really binds the court is 3583. And 3583 requires the consideration of an exception, which was not going to happen in this case once the court found that an aggravated assault had been committed. So if you were to prevail on this argument, and I understand your time is up, I have a follow-up question. Assuming, arguendo, and this is not foreshadowing, that you prevailed on this argument that there was a problem with the hearsay and the confrontation, then would we remand to allow the district court to make, to finish the hearing and take care of this meth issue to see, or would we, why wouldn't the district court have the opportunity to take, you know, didn't have to revoke on that because it was already being revoked, but this seems to be a viable, possible ground and the court hasn't ruled on it? Yes. I mean, our position is that the appropriate disposition would be a reverse and remand for a new supervised release revocation hearing. So the court could consider all of these things and it may very well be that he's revoked on that reason. Positive. Okay. Yes, possibly. Okay. Thank you. Thank you, Your Honors. And you've saved time for rebuttal. Yes, I have. Thank you, Your Honors. Mr. McKay. Good morning, Your Honors. May it please the court. Brian McKay on behalf of the United States. My apologies. In United States v. Alvear, this court affirmed a district court's good cause finding to consider hearsay statements. In circumstances that were more favorable to the releasee in that circumstance. Just as here in Alvear, Mr. Alvear had been accused of a new assault of offense, a grade A violation, and the government's case was largely predicated on the hearsay statements. There the court in Alvear said that Mr. Alvear's interest in cross-examination was strong, but importantly, that interest was diminished, and it was diminished by two things. One, the fact that Mr. Alvear had an affidavit of non-prosecution, which this court considered as at least a partial recantation, and also he had the testimony of his mother, who said contrary to the hearsay statements that Mr. Alvear actually lived with her. So equipped with those two things, the court found that that significantly diminished Mr. Alvear's interest in cross-examination because he was able to get his counter-narrative in front of the district court so that the court could then assess its plausibility. If Mr. Alvear's interest was significantly diminished, how much more so is Mr. Trammell's interest here? He didn't have simply an affidavit of non-prosecution, which Mr. Trammell did have that, but he had a full and detailed recantation where through the public defender's investigator, he was able to essentially testify for Mr. McCuller that what he would have said is, well, yeah, I made those statements to police, which was contrary to what he told the probation officer, by the way, but yeah, I made those statements to police, but police coached me into saying it, that when I told them I want him out of the house, they said I need more, you have to tell me more, and that they coached him into saying that. His counter-narrative was before the district court, and she was able to assess its plausibility in conjunction with the body cam, where at minute three, second nine, it's Officer Griffin that first tells him, he says, I want him out of the house. She says, it's a civil matter, you're going to have to go through something like eviction. He says, no, no, no, immediately, not coach, immediately, no, no, no, no, he just threatened to bash my head in and swung at me. The district court was equipped with all that and could assess the plausibility of that counter-narrative. Here, Mr. Trammell's interest was much more diminished than Mr. Aviar's, again, where the court affirmed. Do we have to make a determination on this excited utterance point in order to affirm here today, Mr. McKay? The court doesn't have to find that it qualifies. If your Honor's question is this, the court doesn't have to find that it qualifies as a Rule 803 excited utterance. It would not qualify it. Assume, arguendo, that it does not qualify it as an excited utterance. How does that affect your case, if at all? The cases I'm familiar with have never put it through the Rule 801 or 803 rules of hearsay. However, there are sufficient indicia of reliability, and, again, I would point to Aviar, where I would distinguish it in the government's favor. In Aviar, the court said that the hearsay statements had sufficient indicia of reliability, and yet here, there was no excited utterance there. In Aviar, the statements were made the next day to police. Here the statements were made immediately, within minutes of the events that the declarant was describing. The statements, as pointed out by the court, the statements to police in Aviar were as recorded by police. Here it was recorded by body cam, an objective record of precisely what Mr. McCuller said in his demeanor when he said it. The district court here didn't have to, as in Aviar, rely on the police officer's description of the declarant's nervousness or fear or anything like that. Here, the judge could look at the body cam and see, and she made the findings. He was agitated. I see he was agitated. Not, she made clear, not in the sense of, like, he was under the influence of anything, but he was agitated, yet calm, and the court could make that determination. Should we, though, be wary of saying no harm, no foul here, where this could have easily gone through the more formal process and impeached him? I would say, I would answer the court this way. I don't think the court, in affirming, would say no harm, no foul. I think the court would say that he had an opportunity. The due process afforded him an opportunity to get his story in front of the court and for the court to assess the plausibility of that story. Normally, you would call the witness and not rely on hearsay from the witness. I mean, would that have been the safer route here, and would that be more protective of our constitutional guarantees, and should we be encouraging the government to do that? In criminal proceedings, absolutely. In revocation proceedings, I think this court's been clear that's not required, and here the government did proffer reasons as to why the government generally is not going to call someone to the stand to then have them lie, and perhaps the government could have subpoenaed him and sat him in the hallway and said, we're not going to call him, we believe he's going to lie. That's precisely what the government did, absent the subpoena, which again, Alvear would say the fact that they didn't subpoena, that cuts against him, Mr. Trammell, but the government put forward in this court's decision in Elizondo verifies that he had a legitimate Fifth Amendment right. He had told police officers at the scene, no, he took a swing at me, he threatened to bash my head in, I believed him, I was scared, I got out of the way because he would have hit me had I not, and then several months later told an investigator, no, no, no, I made that up, I made it up. He had legal jeopardy, again, verified by Elizondo where the witness actually did take the stand and invoke the Fifth Amendment. Here it was quite apparent that that's what was going to, well, maybe not the invocation, but that he would likely perjure himself or at least jeopardize himself for making a false report to a police officer, a violation of Texas penal code. A posting counsel ponders that there is a lack of limitation in the parameters of this. How would you, if you were to prevail, I asked her how she would do, if she would prevail, if you would prevail, how would we write this so as not to open the floodgates? Certainly. I would say that, first of all, if Alvear is like the demarcation line, this case is on the government side of that. But I think it contrasts even more with Jemison. In Jemison, the court did find that there was a violation, that in there, the defendant or the releasee never had an opportunity to really say what his counter story might have been. There, an investigator who was working a confidential informant testified that the releasee had thrice sold drugs to the confidential informant. That was his testimony. And so the question became, based on what? What evidence did the district court have to believe it was the releasee who did that? And it was simply because the investigator said the confidential informant told me that it was him. And that was it. That was it. There's no indication that the releasee even had an opportunity to subpoena that confidential informant whom he might have known, might not, I don't know. And it's not clear from Jemison. But there, they pointed out that there was a recording there, and yet it was never entered into evidence. And the investigator who had reviewed the video more than a year before, he was hazy on it, but he never even said he was able to identify the releasee from the video. It was solely on the confidential informant saying it was the releasee, and that's it. And in that circumstance, the court said, yes, he should have, due process should require the releasee to have an opportunity to further examine the confidential informant. Why did you believe that it was the releasee as opposed to someone else? In other cases, it's been, you know, it's been hearsay on hearsay where a district court assembly looked at a police report and said, well, the police report says your sister said you did this. So explain yourself. No, I find that you did it. That, of course, does not hold up to due process, and this court has recognized it. So there is a limiting principle. This court has applied it in Jemison and some other cases, but Alvear isn't it, and even if Alvear was it, we're on the favorable side of Alvear here. Here, the releasee's interest is not as great as Mr. Alvear's. The indicia of reliability, and most notably the body cam and the district court's ability to assess that, were greater than in Alvear. The government put forward legitimate reasons, even if they were not fear. The government put forward two legitimate reasons why it was not calling Mr. McCuller, and again, Mr. Trammell could have done so on his own, and for these reasons, the court affirmed the good cause finding in Alvear. We believe the same outcome is even more strongly supported here in this case. Unless the court has any questions, I'll cede the rest of my time and ask the court to affirm. Thank you, Your Honor. Thank you, Your Honors. So I'll try to do this quickly. Morrissey v. Brewer, 408 U.S. 471, was the Supreme Court case, and United States v. McCormick, 54 F. 3rd 214, was the Fifth Circuit case that applies that precedent in the supervised release revocation proceeding context. The government just spoke a lot about United States v. Alvear and how this case is like United States v. Alvear. I think this is a good opportunity to draw some factual comparisons between the two cases. So in United States v. Alvear, the declarant was Alvarez, I'll refer to her by her last name. Alvarez filed a police report weeks before the altercation at issue, that's at 187 of that opinion. She sought and obtained a temporary protective order. There were allegations that Alvear had violated this protective order by stalking and harassing her. There were conversations with the probation officer, quote, on numerous occasions expressing safety concerns by Alvarez. And then Alvear actually admitted to a physical altercation in that case. In this case, here's what we have. We only have one alleged threatening incident at play, which was the very incident that formed the basis of the grade A violation. We have an admission by the government below that there was no fear at the time of the revocation proceeding between Mr. McCuller and Mr. Trammell. In fact, the interest was to support the harmony between the two brothers below. We have consistency the other way, right? So whereas Alvear had all this consistency on the one side of the scale, the non-prosecution affidavit kind of alone on its own little island on the one side, we have here the statements at issue, and then we have the non-prosecution affidavit, the conversation with the probation officer, the conversation with the FPD investigator, the consistency actually cuts the other way. We don't have sworn or out-of-court statements. So in the section of Alvear that discusses the indicia of reliability of the hearsay statements there, one of the primary facts on which the court based its decision was the fact that some of the out-of-court statements were sworn statements. We don't have sworn statements in this case. And we don't have an admission by Mr. Trammell that there was an incident that had occurred or an explanation of why the incident had occurred, but it wasn't with malintent, right? We don't have anything like that in this case. As I stated in my initial argument, you know, the crux of the issue was fear in United States versus Alvear, and that fear crystallized the government's interest in not hauling domestic violence victims who are scared of their assailants to testify in court. That also served to diminish the interest in cross-examination because it in fact informed the reason behind the recantation. And it also alleviated concerns over the reliability, again, being because some of them were sworn, there was more on one side of the scale than the other side of the scale. There was no motive to lie that was presented in Alvear. There is a motive to lie here, right? The ulterior motive is I want this person out of my house. You're telling me I can't do it unless there's an offense that's been committed, right? The cops told him that's a civil matter if you want to get him out of your house unless there's an offense. And then we start having the allegations about the swinging bat. And then again, there's the issue of the lack of cooperation here. So United States versus Alvear in this case are totally different cases. The driving force of Alvear was the fear, right, fear. That is not at play in this case at all, number one. Number two, the court asked the government for a limiting principle, right? And the government said, basically what I heard them say was, well, it's not important to confront if you can put in your evidence another way. Well, the rule is what it is for a reason, right? Again, the law is a wash of instances where demeanor is probative. The law's answer to somebody having competing and plausible stories is confrontation. That's how we discern fact from fiction. And the Jimison case actually, I think, is helpful for us and not the government because in the Jimison case, right, the question was when the testimony involves a, quote, credibility choice, right, and that's what we have here. We have a credibility choice. Was he being truthful at the time or is he being truthful now? I don't believe that the government has put forward a limiting principle in their arguments. Again, if good cause exists under these facts, I'm not sure there would be any facts under which good cause wouldn't exist. And I see my time is up. Thank you very much. Thank you, Your Honor.